UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

OCT 15 2026

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| TIMOTHY AGUILAR | § | |
| | § | Case No. |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| TRUSTAGE INSURANCE AGENCY LLC | § | |
| JOHN DOE(S) | § | |
| *Defendants* | § | JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

**NOW COMES INTO COURT,** pro se plaintiff Timothy Aguilar ("Plaintiff") and files his Complaint once again to stop TruStage Insurance Agency LLC ("TruStage") and John Doe's practice of making unsolicited final expense insurance ("FEI") telemarketing calls to Plaintiff's phone number that is still registered on the national do-not-call registry ("DNCR"), using false and misleading outgoing telephone numbers ("spoofed" telephone numbers) and alleges as follows based upon personal knowledge as to himself and his own acts and experiences, and, to all other matters, upon information and belief.

### INTRODUCTION

1. This case arises from unsolicited telemarketing once again promoting TruStage's FEI policies in violation of the TCPA, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about proliferation of intrusive calling practices. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012).

TruStage as an entity – utilizes and/or contracts with telemarketers and/or lead generators to solicit their FEI policies to consumers across the country, as they did with Plaintiff, again, completely ignoring the prior TCPA litigation settled earlier this year that named TruStage as a defendant.

2. This case involves a campaign by Trustage who is in partnership with Ethos, and subsequently, TruStage hired DOE telemarketer and/or lead generator to market its FEI and/or products through unsolicited telemarketing calls, which includes calling individuals on the DNCR without prior express consent and using spoofed numbers. By TruStage's telemarketer's placing these FEI calls to Plaintiff's DNCR phone number, TruStage and DOE's violated the privacy and statutory rights of this Plaintiff once again. When will this madness stop?

3. Trustage does not get the message – this is not the first or last TCPA litigation they will be involved in, as they have been involved in *Adean Hill, Jr. v. Trustage Insurance Agency, LLC* Case # 4:2026-cv-00157, (EDTX, 02-12-2026); *Timothy Aguilar v. Trustage Insurance Agency, LLC*, Case # 4:2026-cv-02719, (SDTX, 04-06-2026). (TruStage I)

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C § 1331, because the claims arise under the federal TCPA, 47 U.S.C. § 227. *Mims,* 565 U.S. 386-87 (2012)

**5.** This Court has personal specific jurisdiction over TruStage because TruStage's DOE telemarketers initiated and/or conducted illegal telemarketing on TruStage's behalf again, to call Plaintiff's DNCR phone number, who resides in this District. TruStage's DOE telemarketer's illegal FEI telemarketing towards Plaintiff is the subject of this dispute from which this lawsuit arises.

**6.** This Court has supplemental jurisdiction over the claims arising under the Texas Business and Commerce Code ("TBCC"), Chapter 304 and 305, while the TBCC Chapter's 304 and 305, is a state law, it complements and supplements the federal TCPA by providing additional protections to Texas residents against unwanted telemarketing calls. 28 U.S.C. § 1367.

**7.** Venue is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this action occurred within this district

## PARTIES

**8.** Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

**9.** Defendant TruStage Insurance Agency LLC is an Iowa limited liability company.

**10.** TruStage's registered agent is CT Corporation System 400 East Court Ave, Des Moines, IA 50309.

**11**. JOHN DOE(s) are unknown unregistered and/or unlicensed business entities and/or individuals not yet known by their true and lawful entity and/or individual name(s).

## Statutory Background of the TCPA

**12.** In 1991, Congress enacted the TCPA to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid,* 592 U.S. 395, 399 (2021).

**13.** As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the TCPA generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613 (2020).

**14.** The result of the telemarketing regulations was the national Do-Not-Call registry. See 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number...This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were

harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

**15.** As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 et seq. and its implementing regulations 47 C.F.R. § 64.1200 et seq.

**16.** The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. §§ 227(b) and (c) and or regulations promulgated thereunder. 47 U.S.C. § 227(c)(5).

**17.** The TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1] The TCPA prohibits initiating any telemarketing call unless the person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. 47 C.F.R. § 64.1200(d). This includes, inter alia, having a written policy, available upon demand, for maintaining a do not-call list, training personnel engaged in any aspect of telemarketing on the existence and use of the do-not-call list, identifying the name of the caller during each call, the name of the person or entity on whose behalf the call was made, and

[1] See Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

associated phone or address information, and actually honoring do-not-call requests within a reasonable time from the date such request is made. *Id.*

**18.** FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act* of 1991, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

**19**. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC,* 28 FCC Rcd. 6574, 6574 ¶ 1 (2013). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers ...under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Id. In re Joint Petition Filed by DISH at* 6584 ¶ 28 (2013).

**20**. Additionally, in 2013, the FCC required prior express written consent for all autodialed or prerecorded calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and

> conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act* of 1991, 27 F.C.C. Rcd. 1844. *Id.*

**21.** For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(b)(3), (c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id.*

**22.** Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

**23.** The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

**24.** The TCPA prohibits the use of artificial or prerecorded voices when calling cellular telephone numbers. 47 U.S.C. § 227(b)(1)(A)(iii).

**25.** The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal

Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id.*

**26**. For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

**27**. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories, including vicarious liability. Under those circumstances, including as described herein. TruStage, the seller is properly deemed to have initiated the call through the person or entity that actually placed it. Under the TCPA standard, the burden is on TruStage to demonstrate that Plaintiff gave his prior express or written consent to receive telemarketing calls to his DNCR phone number, and, present proof that Plaintiff's DNCR phone number was negligently and with a callous disregard, overlooked by its telemarketers and/or not scrubbed on the DNCR.

## FACTUAL ALLEGATIONS

**28**. TruStage is a for-profit company that sells insurance, including funeral and burial insurance and utilizes 3rd party telemarketer's and/or entities to promote its products and/or services to solicit new customers and generate new customers for its ever expanding FEI portfolio.

**29**. Plaintiff personally registered his phone number ending in 832-XXX-7311 on the DNCR on or about September of 2012. *See* **Exhibit 1** Plaintiff has never de-listed this number from the DNCR.

**30.** Plaintiff personally registered his phone number ending in 832-XXX-7311 within the State of Texas DNCR on or about August 16, 2023. *See* **Exhibit 2.** Registration is set to expire on July 27, 2029.

**31**. TruStage and non-party Ethos, a partner of some sort and it's agent's have again utterly and willfully failed to honor Plaintiff's previous DNC requests.

**32**. TruStage and Plaintiff recently settled a TCPA case in this district styled *Timothy Aguilar v. TruStage Insurance Agency*, Civil No. 4:26-cv-2719 filed on April 6, 2026 and dismissed on June 3, 2026. ("TruStage I.")

**33**. Plaintiff does not use his DNCR phone number for a business purpose. 47 C.F.R.§ 64.1400(d)(3).

**34**. Plaintiff made prior DNC requests in response to the pestilence of FEI calls from TruStage's telemarketers unsolicited telemarketing calls he received to his DNCR phone number starting on May 15, 2025 but such requests were ignored with a callous disregard, as the parties found themselves in federal court in TruStage I.

**35**. TruStage, Ethos, affiliates and/or its Doe telemarketers have negligently failed to coordinate do not call requests ("DNC") amongst all individuals and or entities telemarketing on its behalf once again, and it does not ensure that they are properly

scrubbing their call lists against their internal do not call lists nor the FCC's DNCR to avoid calling Plaintiff's DNCR registered phone number once again. As a result, Plaintiff continued to receive TruStage's telemarketing calls despite his prior do-not-call requests.

**36**. TruStage telemarketing efforts, though illegal while directed to this Plaintiff, include using third (3rd) parties who are compensated based on the number of new prospects they can bring to TruStage and potential new customers transferred to TruStage's call center and/or Doe telemarketers, and upon information and belief, this operation may all be grouped together.

**37**. TruStage appointed and/or hired John Doe with the knowledge and expectation that John Doe would make phone calls to solicit TruStage's products and services.

**38.** TruStage had the responsibility to ensure that their agents appointed and authorized to solicit their FEI products obeyed federal and state consumer protection laws.

**39**. Plaintiff answered the estimated nine (9) calls from a variety of spoofed phone numbers from TruStage's DOE telemarketers soliciting FEI products, whose illegal calls have been placed indirectly and or directly, on behalf of TruStage since about June 17, 2026 in this present TCPA litigation.

**40.** TruStage is an entity that acts through its DOE telemarketers, affiliates and agents to place FEI calls into Texas and Plaintiff's DNCR phone number as clearly evident from TruStage I and the facts herein.

**41.** Plaintiff's telephone number as defined and set forth in 47 C.F.R. § 64.1200(a)(1)(iii), is a residential telephone number and is used for communicating with friends and family, navigation purposes, reading local news, sending and receiving emails, purchasing household needs from Amazon, paying bills (electric, gas, mortgage, car payment) attributable to plaintiff's residence, sending and receiving text messages to family and friends. Plaintiff pays for his cellphone from his personal checking account with Bank of America. By placing these calls at bar, to plaintiff's DNCR residential phone number, TruStage and their DOE telemarketers, calling on their behalf once again, have violated the statutory right to Plaintiff's privacy and caused him to suffer damages that are recognized by statute, i.e. invasion and intrusion of privacy, his domestic peace, tranquility, seclusion; caused and/or initiated disruption and distraction into plaintiff's work week, caused anxiety, the constant ringing of plaintiff's cellphone by unwarranted FEI telemarketing calls from TruStage telemarketers and/or subagent(s), intruded upon and occupied the capacity of Plaintiff's cellular phone and a constant and daily depletion of the Plaintiff's cellphone battery; causing Plaintiff aggravation of these nuisance & constant intrusive calls, interfering with navigation routes when Plaintiff

is running an errand, when Plaintiff is trying to sleep on his off days, while Plaintiff is having lunch and or dinner.

**42.** TruStage's Doe telemarketers, agents, affiliates, sub-agents herein are again practicing the art of "spoofing" in their scope of making telemarketing outbound calls to Plaintiff's DNCR phone number to manipulate the caller ID system, so it appears that their calls are from legitimate local phone numbers.[2] Such is a violation of Texas state law. Tx. Penal Code. §33A.051

**43.** TruStage's DOE telemarketers and or affiliate(s) utilize DIDs for "neighbor" spoofing and/or "snowshoe" spoofing.

**44.** Plaintiff has never had any prior business relationship with TruStage, nor been a customer, nor granted express or written consent to TruStage or any entity or individuals acting on their behalf to receive FEI telemarketing calls once again.

**45.** Numbers used for snowshoeing are often phone numbers that cannot receive incoming calls as the calls demonstrated herein from TruStage's Doe telemarketers.

**46.** Plaintiff has made his do not call requests on multiple occasions and to be placed on internal do not call list. Those documented DNC requests fell upon deaf ears as clearly evident from the prior TCPA litigation in Trustage I.

---

[2] Caller ID "spoofing" occurs "when a caller deliberately falsifies the information transmitted to [a cell-phone owner's] caller ID display to disguise their identity." FCC, Caller ID Spoofing, https://www.fcc.gov/spoofing. The Federal Communications Commission has noted that "scammers often use neighbor spoofing so it appears that an incoming call is coming from a local number, or spoof a number from a company or a government agency that you may already know and trust." Id.; see, e.g., *Zelma v. Choice Energy, LLC*, Case No. 19-17535, 2020 WL 5201341, at *1 (D.N.J. Sept. 1, 2020).

**47**. On information and belief, Trustage's multi-level marketing ("MLM") is designed to profit from a deliberate telemarketing business model that is calculated to evade liability under the TCPA. Trustage does not make the initial cold call itself, instead, it contracts and or sources out with a network of their alleged and approved rogue third party vendors, lead generators and or telemarketers ("John Does") to make the illegal, unsolicited FEI calls to consumers like this Plaintiff in Harris County, Texas. Once caught and hauled into court, TruStage takes the Sgt. Schutlz defense and denies all TCPA liability and even though there is a black and white FEI policy as evidence before the Court.

**48**. TruStage is well aware that its telemarketing campaign violates the spirit of the TCPA. TruStage has been the subject of multiple prior federal TCPA litigation for the exact reckless and willful conduct making the basis of this litigation once again, the making of unsolicited FEI telemarketing calls to individuals on the DNCR using 3rd party agents. Despite actual, constructive and repeated notices, TruStage has made a conscious business decision not to take any effective action to stop the pestilence of FEI calls as it continues to profit from the violations, which makes the basis of this TCPA litigation once again and have accepted and kept the premiums herein further ratifying such illegal acts as they were aware in Trustage I prior litigation.

**49**. The FCC regulation prohibits TruStage telemarketers from calling a residential phone number that is on the National DNCR to solicit business. 47 C.F.R. § 64.1200(c)(2)

**50**. A defendant such as Trustage directly violates § 64.1200(c)(2) when it initiates a phone call to a number that is on the do-not-call list, but TruStage knew this when it's appointed alleged agent Zyan Harris (*if such was his true name*) to place the call to Plaintiff and provide a fake scenario about Plaintiff not receiving his FEI policy based on a faulty address.

**51**. To the extent that the Doe telemarketers and/or lead generators are not formal employees, they are nonetheless vested with authority to solicit, quote and sell TruStage life insurance policies by asking medical questions as contained in the TruStage's life insurance application and transmit the applications into TruStage's data systems. TruStage provided these entities, telemarketers, agents with the necessary tools, product access, quoting platforms, and scripts necessary to complete FEI sales on its behalf and then transfer the illegal call to an alleged non-licensed telemarketer to make the illusion more credible that a licensed agent wrote the final expense policy from the inception of the call. A feat that Houdini would be proud of.

**52**. By maintaining this structure, TruStage exercised day-to-day control over DOE's ability to sell its products, imposed compliance requirements, and conferred the

appearance of employment to consumers like Plaintiff. Accordingly, DOE's illegal telemarketing and solicitation conduct is imputable to TruStage under doctrines of actual authority, apparent authority, or ratification.

**53**. TruStage is required by law to distribute its life-insurance products through a network of licensed insurance agents who are authorized to sell TruStage's policies not un-licensed or un-registered foreign based telemarketers who act and/or impersonate licensed insurance professionals.

**54**. Upon information and belief, the following is a limited summary of the incoming calls placed, initiated, and made, indirectly and or directly, upon the behalf of TruStage's un-licensed and/or un-registered subagent(s), 3rd party vendor(s) and/or DOE Telemarketer (*known at this time without discovery and or subpoenas being issued)* to plaintiff's DNCR phone number:

a. On June 17, 2026, Plaintiff received an incoming FEI telemarketing call from CID # 224-664-0664 at 12:25 pm and identified himself as Zyan Harris ('Harris") and indicated he was an agent assigned to help out and inquired if Plaintiff had not received his insurance package and the reason Plaintiff had not received because such policy mailed to the wrong address. Harris makes mention of Liberty Bankers and Ethos-Trustage. Harris states he is mailing the Liberty Bankers policy back out to Plaintiff. Plaintiff went thru the medical qualifying questions and requesting Plaintiff's financial information. Harris stated that Ethos was partnered with Liberty – which was clearly a false statement. Harris quoted an amount of $39.88 that Plaintiff would be paying for a FEI policy.




b. Harris advised he was sending a text message for verification purposes and to read the code back to him. Plaintiff received a text message with a verification code of 601637. Harris asked if Plaintiff could read this code back to him without any further disclosure or elaboration.

c. Harris advised he was sending another verification code to which Plaintiff received and Plaintiff received the incoming text and read the 965939 code back to Harris.

d. Both of these text messages indicated Ethos Life as listed below.




e. On July 14, 2026, Plaintiff received an incoming FEI telemarketing call from local spoofed CID # 281-402-9964 at 10:49 am and agent identified himself as Gary, a licensed insurance agent and states he is with Plaintiff's insurance company and identifies clearly that he is calling from Trustage Life Insurance. Gary knew Plaintiff's personal descriptors, the premium amount being paid, financial information and the name of Plaintiff's beneficiary. Gary states he is going to connect Plaintiff with a licensed agent. Call was terminated. Plaintiff called this number back and is not able to connect the call.

f. On August 3, 2026 Plaintiff received an incoming FEI telemarketing spoofed call from CID # 302-689-3150 at 4:31 pm and telemarketer identified himself as Mark and inquired if Plaintiff had received his insurance policy – Mark's voice changed and another person merged on the line - started to ask medical qualifying questions. Plaintiff advised agent he was blacklisted and agent confirmed this fact. The agent states that there is no American Benefits or Senior Benefits – it's all a scam.

g. Plaintiff called this number and a recording came om and stated "We are sorry but we cannot complete your call."

h. On August 4, 2026, Plaintiff received an incoming call from 908-271-8452 at 11:19 am to which Plaintiff did not answer.

i. On August 4, 2026, Plaintiff received again, an incoming FEI call from 908-271-8452 at 12:34 pm to which he answered and agent identified himself as Anderson and inquired if Plaintiff had received his insurance policy because it was sent to the wrong address – Anderson advised he had carriers named TruStage, Ethos and Liberty that could take the Plaintiff. Plaintiff advised Anderson of active TCPA litigation and call was terminated.

j. On August 4, 2026, Plaintiff received an incoming FEI call from 908-271-8452 at 1:28 pm from Anderson again (different voice) – Plaintiff requested DNC and terminated call.

k. On August 4, 2026, Plaintiff received an incoming FEI call from 908-271-8452 at 3:18 pm from agent named Anderson (different voice) who inquired if Plaintiff received his FEI policy as the policy had been sent to a wrong address – Plaintiff terminated the call.

l. On August 5, 2026, Plaintiff received an incoming FEI call from 908-271-8452 at 11:17 am from agent who transferred the call to Michael Brown and proceeded to ask qualifying questions, who was going to be beneficiary, asked for zip code. Call was abruptly terminated by Michael Brown after asking Plaintiff's name.

m. Plaintiff called this 908-271-8452 and numbers rings busy on three (3) different occasions and times.

n. On September 1, 2026, Plaintiff received an incoming FEI telemarketing spoofed call from CID # 206-647-5537 at 12:11 pm from Eric – who states he is a licensed insurance agent and states that Plaintiff's final expense policy was sent to the wrong address and wanted to re-confirm address so the policy could be resent.

o. Plaintiff called this number and not in service.

**55.** Plaintiff cancelled his FEI policy once again with TruStage on August 6, 2026. Trustage and it's agents, affiliates and/or telemarketers should have known from Trustage I litigation not to keep calling Plaintiff's DNCR and soliciting FEI, but rogue telemarketing habits are hard to break.

**56.** Plaintiff purchased the FEI policy again as part of his investigation into the barrage of FEI calls he had been receiving and calls being abandoned right before the telemarketer or alleged agent or broker called.

**57.** On June 26, 2026, Plaintiff received an email from Trustage with the subject matter "Let's confirm your billing for accuracy." *See* **Exhibit 3**

**58.** On or about June 30, 2026, Plaintiff received Trustage Whole Life Policy # MC4471772 via the United States Postal Service and submits in pertinent part herein. *See* **Exhibit 4 – 4.3.** Ethos is clearly identified as being in partnership with TruStage on this Exhibit.

**59.** On July 5, 2026, Plaintiff received another email from Trustage requesting feedback on the Life Insurance Policy Application. **See Exhibit 5.**

**60.** On July 10, 2026, Plaintiff received another email from Trustage's Lisa Wagner, Sr. VP for TruStage requesting feedback on the Life Insurance Policy Application. ***See* Exhibit 6.**

**61.** On August 6, 2026, Plaintiff sent a copy of his Notice of Intent to File Suit under the TCPA to Trustage via email to the following parties: trustageclaims@trustage.com; CorpCompliance@trustage.com; legal@ethosgroup.com and nancy.warner@cunamutual.com

**62.** On August 13, 2026, Plaintiff received an email from a principal at QuinStreet named Bryan Hankerson ("Mr. Hankerson") regarding a previous request to opt-out and request for do not call policy and procedures that Plaintiff had previously submitted to Ethos in 2025. ***See* Exhibit 7.**

**63.** Mr. Hankerson refers to the April 8, 2025 email request that Plaintiff had sent to support@ethoslife.com and made a DNC request. ***See* Exhibit 8.**

**64.**Plaintiff once again cancelled any and all relationships by sending TruStage a Notice of Intent and within the body of this Notice – Plaintiff wrote "quit, cease and stop calling my phone number listed herein immediately.

**65.** Doe telemarketers' placement of multiple nine (9) illegal final expense calls on behalf of TruStage, within a twelve-month period to Plaintiff's DNCR phone number violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

**66.** The illegal FEI calls once again, made upon the behalf of TruStage are clearly evident TCPA violations, such calls were knowing and willful because TruStage and/or its DOE telemarketers had "reason to know, or should have known, that [its] illegal telemarketing conduct would violate the statute." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001). Bad faith is not required.

**67.** Ethos has been on notice not to call Plaintiff's DNCR phone number since April 2025.

**68.** TruStage is acutely aware that no agents, representatives, independent contractors, sub-agents were to call Plaintiff's DNCR phone number.

**69.** TruStage and or its un-registered agent(s), subagent(s) and/or affiliates purposefully availed themselves of the forum state (Texas) by specifically targeting Plaintiff by using Texas area codes to deceive and or trick this plaintiff into thinking their deceptive and harassing robocalls are local. Plaintiff's prefix of 832 is a local area code in Harris County, Texas. "In addition, "calls to a cell phone can serve as minimum contacts with the state containing the phone's area

code when the calls are received there." *Rogers v. Nat'l Car Cure, LLC*, 636 F.Supp.3d 762, 769 (S.D. Tex. 2022).

**70.** The illegal incoming calls that Plaintiff received on behalf of TruStage's DOE telemarketers alleged agents or producers, subagents herein were placed without policies, procedures and training again, on their un-licensed and/or un-registered Doe telemarketers on the use of an internal do-not-call policy and the federal and state's DNCR's.

**71.** On information and belief, TruStage nor Ethos do not train its agents, sub-agents or DOE's who are engaged in telemarketing on their behalf on the use of any state or federal do not call lists, regulatory compliance, but rather encourage its 3rd party outsourced telemarketers to violate the TCPA for their financial gain and benefit as in this case, and approves, reviewed or participated in developing the telemarketing sales scripts & messages.

**72.** Doe telemarketers for Trustage, subagents, agent(s), 3rd party vendor(s) who made and or delivered such calls on TruStage behalf again, participated in, facilitated, directed, authorized, knew and willfully ignored the spoofing, misleading tele-sales practices, while knowing facts that required a reasonable person to investigate further, but for such violations of state and federal TCPA laws. TruStage approved and ratified the conduct of their telemarketers, agents

and/or subagents to engage in false and misleading telemarketing practices once again.

**73.** On several instances, TruStage's DOE un-licensed telemarketer(s), agents and/or subagent(s) have deceptively refused and failed to identify themselves when calling plaintiff's DNCR phone number when asked the identity of the company the telemarketer was calling on behalf, other than giving a false and fictious name.

**74.** The approximately, indirectly and or directly nine (9) FEI calls made upon TruStage's behalf to Plaintiff's DNCR phone number were not made for "emergency purposes" but rather to annoy, harass and intrude upon Plaintiff's seclusion and daily life's activities.

**75.** Upon information and belief, again, TruStage **does not** have a written policy or procedure(s) for maintaining an internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(1). In Trustage I, Plaintiff sent TruStage a request for their Do-Not Call policy within his Notice of Intent to File Suit. TruStage utterly failed to respond accordingly in two (2) previous and individual requests in TruStage I with such do not call list policy and or procedure and such failure to respond, indicates and/or implies that TruStage does not have a Do Not Call policy and or procedure in place and chooses to evade the TCPA rules once again.

**76.**TruStage's Doe telemarketers, sub-agents and or lead generator(s) are not licensed to solicit, quote and or sell life insurance products, transmit, advertise, and or take any other official action in the making or consummation of an insurance contract for or with TruStage, and such TCPA violations that transpired on several instances are in violation of the Texas Insurance Code. TEX. INS. CODE § 4001.051

**77.**Additionally, TruStage's telemarketers, 3rd party vendors, agents who have directly and or indirectly made, facilitated, placed the FEI solicitation and/or telemarketing calls to Plaintiff's DNCR phone number, have utterly and negligently failed in any adherence to policy and procedure as mandated by the FCC regulations that are required to be implemented by TruStage's DOE telemarketers in STIR/SHAKEN in the IP portion of their telemarketing network.

**78.**The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *In re Dish Network*, 28 FCC Rcd. 6592-93 ¶ 46.

**79.** The Doe telemarketer is the authorized agent of a unknown insurance agent, producer, brokers and the subagent of TruStage and/or Ethos.

**80.** Trustage and/or Ethos withdrew $39.88 consecutively from Plaintiff's Capital One on June 18, 2026. Exhibit 9. Then on August 3, 2036 for the same amount.

See Exhibit 10. The again 2 weeks later, again, on August 18, 2026. See Exhibit 11.

## THEORIES OF LIABILITY

**81.** In *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), the Supreme Court held that district courts independently interpret the TCPA, affording appropriate respect to the FCC's interpretations. Plaintiff's vicarious-liability theory does not depend on deference to the FCC. It rests on federal common-law agency principles the Supreme Court has recognized as governing TCPA liability, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016), as stated in the Restatement (Third) of Agency. Plaintiff cites the FCC's rulings only herein as persuasive authority consistent with those principles.

**82.** TruStage is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers." *In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013)(persuasive). Even if TruStage did not personally initiate the TCPA-violating calls, TruStage is liable because they took steps to cause the calls to be made, and the calls were made pursuant to their actual or apparent authority, and/or ratification. Further, Trustage once again, is liable for participating in a joint enterprise or acting in concert with the John Doe's. TruStage has knowledge of their Doe's lead generators and or telemarketers placing these calls on their behalf to Plaintiff's

DNCR phone number on a harassing and consistent basis but chooses to take the Sgt. Schultz defense of "I know nothing" again and wants this Court to believe that.

**83.** TruStage is directly liable under the TCPA for outsourcing their telemarketing to third party telemarketers who violate the TCPA by their acts stated herein.

**84.** Plaintiff has been unable to ascertain the identity of the John Doe's and has accordingly named John Doe until the identity is revealed in pre-trial discovery. It should further be noted that the FEI purchased by Plaintiff and submitted as Exhibit 4 herein, is void of the name of any insurance agent writing the policy as most standard policies contain the name of the agent selling or writing the policy.

**85.** Upon information and belief, TruStage's unlicensed telemarketer(s) and/or verifier a/k/a product specialist, was the selling insurance agent, as no insurance license is needed overseas to sell life insurance policies within the State of Texas and the TCPA and Insurance laws apparently are not applicable to TruStage's DOE telemarketers when quoting insurance premiums and transmitting into Trustage's data cloud systems.

**86.** On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in

> many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.
>
> *May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (persuasive).

## VICARIOUS LIABILITY / AGENCY LIABILITY

**87.** The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107

**88.** The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." Id. at 6592 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**89.** In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either 227(b) or section 227(c) that are committed by third-party telemarketers." Id. at 6574 ¶ 1.

**ACTUAL AUTHORITY**

**90.** Trustage gave actual authority to John Doe(s) to generate prospective customers via banned telemarketing calls to a phone number on the DNCR and while having constructive notice not to keep calling that number directly and/or indirectly by their agents, brokers, producers, affiliates as evidenced from TruStage I. litigation in this District.

**91.** The FEI calls are integrated seamlessly into their sales process so that it appeared to outside parties like Plaintiff that the John Doe's were the telemarketing department of TruStage.

**92.** Defendant TruStage acted in concert with John Doe's and has been able to enjoy the accepted benefits of illegal telemarketing while moving the illegal activity "outside their purview."

**93.** The May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶34).(persuasive)

**94.** Given TruStage having hired, directed and controlled the final expense telemarketing by John Doe(s), TruStage gave John Doe(s) actual authority to act as its agent in conducting telemarketing on its behalf.

**APPARENT AUTHORITY**

**95.** The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct

28 FCC Rcd at 6592 (¶ 46).

**96.** Trustage authorized John Doe, agent(s), affiliates, to generate prospective customers for them.

**97.** It appeared to Plaintiff that John Doe was one and the same company with TruStage.

**98.** John Doe was able to enter information into TruStage's propriety systems and/or databases to process the final expense information, insurance quote, input

personal and medical information about Plaintiff into computer systems fully integrated.

**99.** Plaintiff reasonably believed and relied on the fact that John Doe and any other agents that had called Plaintiff had received permission, authority and instructions from TruStage to advertise and/or promote and market their FEI products and/or services to Plaintiff, even while being on the national DNCR and rules and regulations were not applicable to the violators.

**100.** TruStage additionally cloaked John Doe(s) and agent(s) or affiliates with apparent authority to make the final expense telemarketing calls at issue.

**101.** Plaintiff could not independently verify or confirm the true identity of Zyan Harris while speaking to him on June 17, 2026. This FEI industry is infected with deceptive trade practices, scammers, telemarketers seeking personal information to sell abroad and Harris was just another voice calling Plaintiff's DNCR phone when he should not have been calling to tele market on behalf of Trustage and/or Ethos.

## RATIFICATION

**102.** TruStage actively and aggressively accepted FEI business that originated through the illegal telemarketing placed upon their behalf by their lead generating and/or telemarketers John Doe(s) and/or alleged agents or affiliates.

**103.** By engaging John Doe's to make final expense calls on its behalf to generate new business, TruStage manifested assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control as described in the Restatement (Third) of Agency.

**104.** By sending a corporate and branded TruStage welcome letter and corporate emails, to Plaintiff pursuant to an illegal FEI call, TruStage "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of John Doe who prepared and transmitted the FEI policy found at Exhibit 4 herein and as described in the Restatement (Third) of Agency.

**105.** A principal can make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement 7 2.03 cmt. c

**106.** TruStage ratified John Doe's TCPA violations by knowingly accepting the benefit of the FEI policy delivered to Plaintiff as a new prospect once again, despite the fact Plaintiff's DNCR phone number had been identified using illegal telemarketing methods and TruStage had concluded Trustage I litigation less than 90 days before the illegal telemarketing calls re-surfaced again.

**107.** John Doe permitted their salespeople and/or telemarketers to solicit prospective customers for TruStage, including Plaintiff, while turning a blind eye to the illegal way in which the potential prospect was identified.

**108.** Defendant TruStage knowingly and actively accepted final expense business that originated through the illegal calling channels placed by their Doe telemarketers and/or affiliates and agents.

**109.** Given TruStage's right to control over, and participate in, the final expense telemarketing campaigns at issue, and/or its ratification of the campaign, it is directly and vicariously liable for the violations alleged herein. All of the final expense calls placed by TruStage's DOE telemarketers, were made on behalf of, and for the direct benefit of TruStage.

**110.** TruStage utterly and negligently failed to keep, maintain, implement, coordinate and/or enforce policies and procedures and training to ensure compliance with the TCPA, and/or provide adequate oversight and training to ensure compliance once again.

**111.** TruStage were part of a common enterprise with its agents, DOE telemarketers and producers and had a community of interest in promoting TruStage's FEI insurance business pursuant to the illegal telephone telemarketing campaign they bestowed upon this plaintiff again.

**112.** Another theory of ratification holds that a principal may be held liable if the principal receives or retains the benefits it generates as such is the case at the time of this filing.

**113.** As a direct and proximate result of Jane/John Doe's illegal phone calls, Plaintiff suffered actual damages, including his wasted time to answer the violating calls, aggravation of the repeated and harassing phone calls, loss of storage space as Plaintiff would take screen shots of the illegal phone calls, constant disruption into his daily activities while being at work, having lunch and or dinner, invasion of his privacy and the nuisance of receiving the calls daily and consecutively.

**THE TEXAS BUSINESS AND COMMERCE CODE § 305.053**

**114.** A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication for damages in the amount provided by this section. Tex. Bus. & Com. Code § 305.053(a)(2).

**115.** Texas's telephone-solicitation statute incorporates the federal statute's prohibitions, and an analysis of one applies to the other.[3]

[3] See Cherkaoui v. Santander Consumer USA, Inc., 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014) ("The Texas TCPA proscribes only that conduct which is also prohibited by the TCPA. If no violation of the TCPA exists, there is no violation of the Texas TCPA.").

**116.** A plaintiff who prevails in an action for damages under this section is entitled to the greater of $500 for each violation or the plaintiff's actual damages. Tex. Bus. & Com. Code § 305.053(b)(1-2).

**117.** The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. & Com. Code § 305.055

**118.** The Plaintiff may seek damages under this Texas law for violations of 47 USC § 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

**119.** A telephone solicitor may not make a consumer telephone call to a consumer unless the telephone solicitor, immediately after making contact with the consumer to whom the call is made, identifies himself or herself by name, the business on whose behalf the telephone solicitor is calling, and the purpose of the call. TBCC § 301.051(b)(A-C).

**120.** The final expense telemarketing solicitations and real time quotes that TruStage's foreign accented telemarketer's, agent(s), affiliates and or representatives made, while calling Plaintiff's DNCR phone number on the times and dates listed, are non-licensed insurance telemarketers and/or affiliates, or agents that are not duly licensed within the United States or the State of Texas to sell any type of insurance products, in violation of state and federal laws.

Venue for an action brought under this chapter is in the county in which the consumer telephone call was received. TBCC § 301.105(2).

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)**
**(Against TruStage & John Doe(s))**

**121.** Plaintiff incorporates by reference each and every paragraph of this complaint as if fully set forth herein.

**122.** The foregoing acts and omissions of these Defendants making nine (9) non-emergency telemarketing calls to Plaintiff's DNCR phone number without any type of consent, constitutes violations of the TCPA upon the Plaintiff answering these illegal calls. The calls were made for the express purpose of soliciting this Plaintiff for life insurance products sold by TruStage.

**123.** As a result of this unlawful conduct clearly evidenced before the Court, Plaintiff was statutorily damaged at least nine (9) times under 47 U.S.C. § 227(c)(5) by TruStage's illegal telephone calls described above, in the amount of $500 for each individual violation.

**124.** Plaintiff was further statutorily damaged because TruStage and DOE's willfully and/or knowingly violated this subsection of the TCPA as they did in Trustage I litigation. Plaintiff requests that the Court treble the damages amount as permitted under 47 U.S.C. § 227 *et seq* for this willful and/or knowing violation.

**125.** The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his telephone number on the DNCR of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

**COUNT II**
**Violation of the Telephone Consumer Protection Act**
**(Failure to Institute and Honor Do-Not-Call Request(s) and/or Procedures - Internal Do Not Call Violations)**
**47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**

**126.** Plaintiff incorporates by reference each and every paragraph of this complaint as if fully set forth herein.

**127.** The TCPA and its accompanying regulations impose an affirmative obligation upon entities engaged in telemarketing to honor consumer requests to cease such solicitations. See 47 C.F.R. § 64.1200(d)(6).

**128.** Specifically, 47 C.F.R. § 64.1200(d)(6) requires a "person or entity making calls for telemarketing purposes" to "maintain a record of a consumer's request not to receive further telemarketing calls" and honor said request "for 5 years from the time the request is made."

**129.** On numerous occasions, Plaintiff expressly and unequivocally instructed TruStage's telemarketers to stop contacting him as he did in Trustage I prior litigation and place his number on their internal do-not-call list. Each of these

verbal instructions constituted a legally effective do-not-call request pursuant to 47 C.F.R. § 64.1200(d) and 47 C.F.R. § 64.1200(c)(2)

**130.** Notwithstanding Plaintiff's clear requests and TruStage I litigation, TruStage's telemarketers and or lead generator(s) chose to ignore them and continued to initiate and place illegal telemarketing calls to Plaintiff's DNCR phone number while acting upon TruStage's behalf in soliciting their final expense insurance products.

**131.** As a result of Defendants' failure to implement, maintain, and honor an internal do-not-call list, and/or their intentional decision to disregard Plaintiff's various DNC requests and prior Trustage I litigation, Plaintiff is entitled to statutory, actual, and treble damages against TruStage and/or DOE's.

**Count III**
**Violations of the TCPA, 47 U.S.C. § 227; 47 C.F.R. § 64.1601(e)(1).**
**(Misleading Caller Identification — Against the Doe Defendants Only)**

**132.** All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**133.** It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

**134.** It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

**135.** The Doe Defendants, on behalf of Trustage, violated the TCPA by causing nine (9) FEI telemarketing calls to be initiated to Plaintiff within a 12-month period, without providing a CPN or ANI that allowed this Plaintiff to make a do-not-call request during regular business hours, and without the provision of accurate caller ID name

**136.** These violations were willful or knowing.

**137.** As a result of these violations, Plaintiff is entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

**138.** Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT IV
## Violations of Texas Business and Commerce Code § 304.151(b)(3)
## Spoofed Caller Identification

**139.** All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**140.** Doe Defendant's made, placed, facilitated on behalf of Trustage and/or Ethos, nine (9) telemarketing phone calls to Plaintiff's DNCR phone number in violation of 47 U.S.C. § 227(c).

**141.** In making a telemarketing call, a telemarketer may not cause misleading information to be transmitted to a recipient's caller identification service or device to otherwise misrepresent the origin of a telemarketing call. Tex. Bus. & Com. Code § 304.151(b)(3).

**142.** The consumer may bring a civil action based on the second or subsequent violation of Subchapter B if the consumer has notified the telemarketer of the alleged violation. Tex. Bus. & Com. Code § 304.257(a)(1).

**143.** If the consumer brings an action based on a violation of Section 304.052 and the court finds that the defendant willfully or knowingly violated that section, the court may award damages in an amount not to exceed $500 for each violation. Tex. Bus. & Com. Code § 304.257(b).

**COUNT V**
**Violations of Texas Business and Commerce Code § 305.053**
**Phone calls in Violation of 47 U.S.C. § 227(c)**

**144.** All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**145.** Doe Defendant's, upon the behalf of Trustage, placed at least nine (9) illegal telemarketing calls to Plaintiff in violation of 47 U.S.C. § 227(c), and while clearly knowing that any of their agents, affiliates, telemarketers was to e calling Plaintiff's phone number.

**146.** A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in theist ate against the person who originates that communication. Tex. Bus. Com. Code § 305.053.

**147.** Plaintiff was statutorily damaged at least eleven (11) times under 47 U.S.C § 227(c) by these named Defendant by the telephone calls described above, in the amount of $500.00 per call. Tex. Bus. Com. Code § 305.053(b)(1).

**148.** If the court finds that the defendant committed the violation knowingly or intentionally, the court may increase the amount of the award of damages under Subsection (b) to not more than the greater of $1,500 for each violation. Tex. Bus. Com. Code § 305.053(c)(1).

**149.** The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. Com. Code § 305.055.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief against TruStage and John Doe(s):

A. Leave to amend this Complaint should additional Doe's become known and/or identified and to conform to the evidence presented at trial;

B. A declaration that TruStage's and DOE's actions, as set out above, violated the TCPA and Texas state law;

C. A declaration that TruStage's and DOE's illegal telemarketing actions, as set out above, violate the TCPA willfully and knowingly;

D. An award awarding trebling damages to $1,500 per violation under 47 U.S.C. § 227(b)(3) and § 305.053(c)(1);

E. An injunction requiring TruStage and their telemarketers to cease all unlawful calls.

F. An award of damages, including punitive damages, and costs and attorney fees should Plaintiff retain counsel in the future of this litigation and/or prior to trial;

G. Such other and further relief that the Court deems reasonable and just.

**Demand for a Jury Trial**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Timothy Aguilar
Pro Se
2807 Randolph Road
Pasadena, Texas 77503
832-689-7311
proselitigationtx@gmail.com

# National Do Not Call Registry - Your Registration Is Confirmed

From: verify@donotcall.gov

To: locateutoday@aol.com

Date: Saturday, May 11, 2024 at 04:16 PM CDT

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 7311 on September 29, 2011. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov to register another number or file a complaint against someone violating the Registry.

*****************************************************************************************************************************

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

**PLAINTIFF'S EXHIBIT**

Number 1

**Texas "No Call Lists"**

# Search Consumer Registration

## Registration Information

Telephone Number: 832-689-7311
Amount: $0.00
Method of Payment:

List: Statewide "Do Not Call" List
Status: Registered 7/27/2026 - Expires 7/27/2029

**Search Another Registration**

**Consumer Information**

---

Public Utility Commission of Texas | Texas "No Call Lists" Home | Texas Electric Choice

**PLAINTIFF S EXHIBIT**
Number 2

From: TruStage Service
TruStageService@email.trustage.com
Subject: Let's confirm your billing for accuracy
Date: Jun 26, 2026 at 11:40:20 AM
To: recoveryhouston81@gmail.com

---

This action is needed for your first bill — View in browser

TruStage® — 844.337.5835

# Please verify the billing information for your new policy



## Timothy, here's the automatic payment plan you set up

**Your insurance:** TruStage® Whole Life
**Payment frequency:** Monthly
**Payment amount:** $39.88
**Payment type:** Checking account
**Policy effective date:** 6/17/26*

If you need to make any payment plan changes before 6/17/26, please call us. Your next step is to create your secure online account to review and manage your policy.

PLAINTIFF'S EXHIBIT
Number 3

→ **Create your account**

This policy helps provide financial protection when it's needed most. Be on the lookout for it in the mail in the next three to five days!

*Payments will recur on the same day of the month per each billing cycle.

Please allow two to three days following your recurring bill date for your payment to appear in your credit card, bank or credit union statement.

# Need help?

**Give us a call at 844.337.5835.**

Monday – Friday, 7:00 AM – 6:00 PM CT

TruStage®

This email was sent to recoveryhouston81@gmail.com by TruStage.

TruStage® is the marketing name for TruStage Financial Group, Inc. its subsidiaries and affiliates. Securities distributed by CUNA Brokerage Services, Inc., member FINRA/SIPC, a registered broker/dealer, 2000 Heritage Way, Waverly, IA, 50677. **Investment and insurance products are not federally insured, may involve investment risk, may lose value and are not obligations of or guaranteed by any depository or lending institution.** All guarantees are based on the claims paying ability of the underwriting company. Please view these important product-specific disclosures:

Consumer Insurance | Annuities | Preplanning | Lending | Retirement | Business Protection

Privacy

© TruStage

TRG-Life-Auto-Pay

TruStage™

P.O. Box 61 • 2000 Heritage Way
Waverly, IA 50677-0061



Prepared for TIMOTHY A AGUILAR, in partnership with Ethos

TIMOTHY A AGUILAR
2807 RANDOLPH RD
PASADENA TX 77503

284

**Important**: REVIEW REQUESTED

Your TruStage Whole Life Insurance policy is enclosed.

June 25, 2026

## Welcome TIMOTHY

Your TruStage Whole Life policy is enclosed. Congratulations on taking this important step to help protect your family's future. You've made a great choice. Here are some of the key benefits your policy provides:

- Income-tax-free payment to your beneficiaries if you die.
- Permanent protection, even if your health changes.
- Guaranteed rate for life, as long as payments are made.

## Your policy summary

| | |
|---|---|
| Policy number... | MC4471772 |
| Insured............... | TIMOTHY A AGUILAR |
| Beneficiary......... | ARACELY AGUILAR |
| Policy amount... | $8,000 |
| Policy status.... | Effective 06/17/2026 |
| Policy type......... | TruStage Whole Life |
| Issued by........... | MEMBERS Life Insurance Company |

## Your next steps

1. Review payment details below.
2. Review the enclosed documents and save your policy in a secure place.

## Your payment details

**Payments Deducted from:** Checking account ending in 6701 at your financial institution

**First Payment:** $39.88 deducted 07/17/2026

**Ongoing Payments:** $39.88 deducted 08/17/2026 and on the 17th monthly

Payments typically process in 1-3 business days (excluding weekends and holidays) and will appear on your financial statement as a charge by TruStage MEMBERS.

## Managing your account

For help or to file a claim call: 888.787.8243
Take control of your policy at www.trustage.com/myaccount

Your financial institution may charge a fee if funds aren't available at the time of deduction. If the first attempt is not honored, a second will be attempted.

TruStage™ Insurance is issued by Members Life Insurance Company, part of TruStage Financial Group, Inc.

PLAINTIFF'S EXHIBIT
Number 4

CU91175 284 1 04177536 4329 P OF07_A

**MEMBERS Life Insurance Company**

P.O. Box 61, 2000 Heritage Way Waverly, IA 50677-0061
1.888.787.8243 or visit www.trustage.com

TruStage™

**APPLICATION FOR**
Individual Whole Life Insurance

## APPLICANT COVERAGE

Name Timothy A Aguilar

Address 2807 RANDOLPH RD

City PASADENA State TX ZIP 77503

**Select the amount of Whole Life Coverage**

☒ $ $8,000

☐ Check here only if you do not want the automatic premium loan provision.* (see back)

Primary phone (832) 689-7311

Email address recoveryhouston81@gmail.com

Social Security Number X X X - X X - 5333

Date of birth 08 / 07 / 1965 Gender ☒ Male ☐ Female

Height 5 feet 10 inches Weight 240 lbs

## EXISTING INSURANCE AND REPLACEMENT INFORMATION

Do you have any existing life insurance policies or annuity contracts with our company or any other company? ☐ YES ☒ NO

Will the coverage applied for replace, discontinue, or change any existing life coverage or annuities in this or any other company? ☐ YES ☒ NO

| Name of company | Amount | Type of coverage | Policy number |
|---|---|---|---|
| | | | |
| | | | |

## BENEFICIARY INFORMATION

| Beneficiary Name (s) | Relationship to You | Address |
|---|---|---|
| Aracely Aguilar | Child | |
| | | |
| | | |
| | | |

## HEALTH INFORMATION

**Please answer these questions**

1) Have you used tobacco or nicotine products within the past 12 months? ☐ YES ☒ NO

2) Do you require assistance performing activities of daily living such as dressing, bathing, cooking, cleaning, or shopping due to a health condition or injury? ☐ YES ☒ NO

3) Are you currently hospitalized, under hospice care, or do you reside in an assisted living or nursing facility? ☐ YES ☒ NO

4) Other than routine care, in the past 3 months, have you been advised by a licensed medical professional to have surgery, any diagnostic test (other than for HIV) or any procedure which has not been completed or the results are unknown? ☐ YES ☒ NO

Approval is based upon your he[alth and other factors affecti]ng your insurability.

PLAINTIFF'S EXHIBIT
Number 4.1

5) Within the past 5 years, have you been treated or diagnosed by a medical professional for the following? (Check all that apply.) [X] YES [ ] NO

- [ ] Cancer, except basal cell carcinoma (skin cancer)
- [X] Diabetes
- [ ] Stroke
- [ ] Heart Disease or Condition (except high blood pressure)
- [ ] Chronic Kidney Disease
- [ ] Chronic Lung Disease
- [ ] Chronic Depression or Anxiety
- [ ] Bipolar Disorder or Schizophrenia
- [ ] Dementia or Alzheimer's Disease
- [ ] Head or Brain Injury or Disorder of the Brain or Spinal Nerves
- [ ] ALS (Lou Gehrig's Disease) or Muscular Dystrophy
- [ ] Alcohol or Drug Abuse
- [ ] Cirrhosis of the Liver
- [ ] HIV or AIDS

6) Do you require the use of oxygen? [ ] YES [X] NO

7) Are you receiving dialysis? [ ] YES [X] NO

## PAYMENT

**Deduct**

- [X] Monthly
- [ ] Quarterly
- [ ] Semi-annually
- [ ] Annually

**Option 1****Deduct from my

- [X] Checking Account
- [ ] Savings Account

Routing # 031176110

Account # XXXXXXXXXXXXXXXXXXXXX701

Financial institution name CAPITAL ONE N.A.

[ ] **Option 2**** Deduct from my Credit/Debit Card (MC/VISA/Discover Only)

Account # ____________ Expiration date ____________

Name of card holder ____________

Special remarks ____________

Choose your automatic premium deduction date 17th
Payments typically process in 1-3 business days (excluding weekends and holidays).

**I authorize by signing below, MEMBERS Life Insurance Company to deduct premiums from the account I've selected for the life coverage applied for on this application. This authorization will remain in effect until revoked by me in writing or by phone. If you leave this section blank, you will receive a bill.

[ ] **Option 3** Please send me a bill.

## AGREEMENT

I authorize by signing below, that I agree to all **four** of the following statements:

1. I authorize by signing below, that all my statements and answers are true to the best of my knowledge and belief. This application and any supplemental application(s) will be the basis of any insurance issued. I understand: (1) benefits may be denied during the first 2 years from the effective date if I fail to give true and complete answers in this application, as described in the incontestability provision of the policy; and (2) this insurance becomes effective only if: a.) my application is approved and a policy is issued; b.) my first full premium due is received while I am alive and within 21 days of my policy's effective date; and c.) answers to questions concerning my insurability are as stated in this application. Agents are not authorized to determine insurability, void, waive or change any terms of the application, or make a contract for the Company.

2. I authorize any health care providers, pharmacy benefit manager/ pharmaceutical firm, insurance companies, consumer reporting agency, the Department of Motor Vehicles, financial institution, or employer with information about my physical or mental health condition, substance or alcohol use, STDs, diagnosis or treatment of Human Immunodeficiency Virus (HIV), prescription drug records, financial status, employment status, or other relevant information about me, to give all information (except psychiatric treatment notes) to MEMBERS Life Insurance Company ("Company") or its reinsurers to determine eligibility for insurance or benefits. Such information will be released only to reinsurers, persons performing business duties as delegated or contracted for by the Company related to my application and insurance-related functions, as permitted or required by law, or as I further authorize. Health information shared for these purposes is not subject to federal health information privacy laws; however state privacy laws do apply.

3. I agree this authorization is valid for 24 months or such time limit as permitted in the state where the policy is delivered, a copy is as valid as the original, and I or my authorized representative can receive a copy upon request. For purposes of collecting information in connection with a claim for benefits, this Authorization is valid for the duration of the claim.

4. I understand that: (1) I can revoke this authorization at any time by written request to the Company; (2) revocation of this authorization will not affect any prior action taken by the Company in reliance upon this authorization, and (3) failure to sign, or revocation of this authorization may impair the Company's ability to evaluate claims or process applications and may be a basis for denying this application or a claim for benefits.

**Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.**

### SIGNATURE

Required Signature and Date Signed Authorizes Payment and Agreement

X *Timothy A Aguilar* 06/17/2026 17:35

Applicant's Signature | Date Signed

***Automatic Premium Loan Provision:** Allows you to borrow against any accumulated cash value from your policy to pay a premium and help prevent policy from lapsing. We suggest that you keep this feature.

**PLAINTIFF'S EXHIBIT**
Number 4.2

AUTHORIZATIONS AND AGREEMENTS

# Electronic Delivery Terms and Privacy Notice.

Please take time to read the information below. If you have any questions or need any assistance, please call us at 888-888-3942.

IMPORTANT INFORMATION

By clicking "I agree" below, you consent to receiving information permitted by law to be sent electronically conducting transactions in electronic form and using electronic signatures in our relationship with you. You also acknowledge that:

- You can access, read, and print these Electronic Delivery terms.
- Your electronic signature is the legal equivalent of your written signature, just as if you had signed a paper document.

You are not obligated to enter into transactions electronically. If you choose to withdraw your consent to electronic transactions or would like to update your email address, you must contact MEMBERS Life Insurance Company. You can call us toll-free at 800.779.5433 or write to MEMBERS Life Insurance Company, 2000 Heritage Way, Waverly, IA, 50677. There is no fee charged for such requests.

You are consenting to use electronic communications, electronic records, electronic documents, and electronic signatures rather than paper documents, as permitted by law, for communications and transactions with MEMBERS Life Insurance Company for the following (including, but not limited to):

- Agreements and contracts, including this Consent and Agreement.
- Certificates of Insurance.
- Notices and/or disclosures that various federal and/or state laws or regulations require that we provide to you.
- Notices, documents, statements, data, records or communications regarding your coverage, including changes in terms of coverage.
- Privacy policies and notices.
- Periodic billing or account statements.

For products and/or services you applied for, purchased, and/or service online, you agree to receive annual privacy notices at www.TruStage.com.

In order to access the documents we send you electronically, a minimum standard of technology is required, the fully functional hardware, software and services necessary include a computer with a Microsoft Windows or Macintosh operating system, Internet access, a working email address and email software, compatible web-browsing software such as Internet Explorer and Internet access services, a current version of a program that accurately reads and displays PDF files (such as Adobe Acrobat Reader), and a printer if you wish to print out and retain records on paper, and electronic storage if you wish to retain records in electronic form. It is your responsibility to provide us with an accurate email address as well as other contact information, and to inform us of any changes in this information. You understand you will be deemed to have received the foregoing documents even if you fail to provide the necessary technology. If we receive information or you inform us that you did not receive the document we send electronically, we will resend the document initially provided by electronic transmission by regular mail to you at the address shown on the policy.



PLAINTIFF S EXHIBIT
Number 43

Gmail

Tim Aguilar <recoveryhouston81@gmail.com>

---

## Reminder: Feedback Requested: Life Insurance Policy Application

1 message

---

**TruStage** <TruStage@qualtrics-survey.com> Sun, Jul 5, 2026 at 6:00 PM
Reply-To: TruStage <noreply@qemailserver.com>
To: recoveryhouston81@gmail.com

TruStage™

***A quick reminder to provide feedback on your recent life insurance policy. If you have already started, you will resume where you left off. Thank you!***

Hello Timothy,

As a valued customer, we would like to hear about your experience with the process of applying for the TruStage life insurance policy. This life insurance policy is made available to you as a member of Ethos Technologies, Inc and your satisfaction is an important measure of our success.

We want to make sure we meet your expectations. We appreciate any feedback you can give us. This short research study should take about 5 minutes.

**How easy was it to set up your payment?**

| | | | | | | |
|---|---|---|---|---|---|---|
| Very difficult | Difficult | Somewhat difficult | Neither difficult nor easy | Somewhat easy | Easy | Very easy |

PLAINTIFF'S EXHIBIT
Number ____

PLAINTIFF'S EXHIBIT
Number 5

Thank you for taking the time to tell us about your experience. We truly appreciate your feedback as it will help us to enhance the TruStage experience.

Sincerely,
Lisa Wagner
Senior Vice President, Experience Operations
TruStage

**You may also use the following link to take the survey.**

TruStage™

This email was sent to recoveryhouston81@gmail.com by TruStage.

TruStage™ is the marketing name for TruStage Financial Group, Inc. its subsidiaries and affiliates. Securities distributed by CUNA Brokerage Services, Inc., member FINRA/SIPC, a registered broker/dealer, 2000 Heritage Way, Waverly, IA, 50677. **Investment and insurance products are not federally insured, may involve investment risk, may lose value and are not obligations of or guaranteed by any depository or lending institution.** All guarantees are based on the claims paying ability of the underwriting company. Please view these important product-specific disclosures:

Consumer Insurance | Annuities | Preplanning | Lending | Retirement | Business Protection

Privacy | Unsubscribe

© TruStage

From: TruStage TruStage@qualtrics-survey.com
Subject: Reminder: Feedback Requested: Life Insurance Policy Application
Date: Jul 10, 2026 at 6:00:41 PM
To: recoveryhouston81@gmail.com

TruStage™

***A final reminder to provide feedback on your recent life insurance policy. If you have already started, you will resume where you left off. Thank you!***

Hello Timothy,

As a valued customer, we would like to hear about your experience with the process of applying for the TruStage life insurance policy. This life insurance policy is made available to you as a member of Ethos Technologies, Inc and your satisfaction is an important measure of our success.

We want to make sure we meet your expectations. We appreciate any feedback you can give us. This short research study should take about 5 minutes.

**How easy was it to set up your payment?**

| | | | | | | |
|---|---|---|---|---|---|---|
| Very difficult | Difficu lt | Somewhat difficult | Neither difficult nor easy | Somewhat easy | Eas y | Very easy |

Thank you for taking the time to tell us about your experience. We truly appreciate your feedback as it will help us to enhance the TruStage experience.

Sincerely,
Lisa Wagner
Senior Vice President, Experience Operations
TruStage

**You may also use the following link to take the survey.**

PLAINTIFF'S EXHIBIT
PLAINTIFF'S EXHIBIT
Number 6

TruStage™

This email was sent to recoveryhouston81@gmail.com by TruStage.

TruStage™ is the marketing name for TruStage Financial Group, Inc. its subsidiaries and affiliates. Securities distributed by CUNA Brokerage Services, Inc., member FINRA/SIPC, a registered broker/dealer, 2000 Heritage Way, Waverly, IA, 50677. **Investment and insurance products are not federally insured, may involve investment risk, may lose value and are not obligations of or guaranteed by any depository or lending institution.** All guarantees are based on the claims paying ability of the underwriting company. Please view these important product-specific disclosures:

Consumer Insurance | Annuities | Preplanning | Lending | Retirement | Business Protection

Privacy | Unsubscribe

© TruStage

From: ConsumerCompliance
ConsumerCompliance@quinstreet.com
Subject: COM-114270:Ethos Request(s) for Opt Out of Sale of Data Subject(s) Pursuant to Data Privacy Laws
Date: Aug 13, 2026 at 1:10:30 PM
To: Bryan Hankerson bhankerson@quinstreet.com

---

Hello,
Thank you for your inquiry. Only certain states currently have comprehensive consumer privacy laws that give residents the legal right to request deletion of personal information from companies like QS. Regardless, we will add the contact information you have provided to our internal Do Not Contact list.
Thank you,
QuinStreet Compliance Team

PLAINTIFF S EXHIBIT
Number 7

# Do Not Call Policy

From: Tim Aguilar (locateutoday@aim.com)

To: support@ethoslife.com

Date: Tuesday, April 8, 2025 at 10:09 PM CDT

Please provide me a copy of your do not call policy and or procedures for a consumer such as I who does not want o be contacted by your final expense telemarketers - I have been telling your telemarketers to stop calling me at 832-689-7311 --

Tim Aguilar
*Finding People & or Collateral Who Don't Want to be Located.*

**PLAINTIFF S EXHIBIT**
Number 8

10:27

Transaction Details

$39.88

Posted on Thursday, June 18, 2026

**ETHOS LIFE - TRU**
Transfer

Appears on your statement as:
Withdrawal from ETHOS LIFE - TRU ETHOS LIFE

Memo
ETHOS LIFE

Report a Problem

Home Rewards Help Offers Profile

**PLAINTIFF S EXHIBIT**
Number 9

10:28 1 of 1

Transaction Details

$39.88

Posted on Monday, August 03, 2026

**ETHOS LIFE - TRU**
Transfer

Appears on your statement as:
Withdrawal from ETHOS LIFE - TRU ETHOS LIFE

Memo
ETHOS LIFE

Report a Problem

Home Rewards Help Offers Profile

PLAINTIFF S EXHIBIT
Number 10

10:28 1 of 1

Transaction Details

$39.88

Posted on Tuesday, August 18, 2026

**ETHOS LIFE - TRU**
Transfer

Appears on your statement as:
Withdrawal from ETHOS LIFE - TRU ETHOS LIFE

Memo
ETHOS LIFE

Report a Problem

Home Rewards Help Offers Profile

PLAINTIFF S EXHIBIT
Number 11